# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. CR17-3041-LTS |
| vs. | | |
| CLINT DEVRIES, | | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | | |

## I.    INTRODUCTION

This matter is before me on a motion (Doc. No. 54) by non-party Elma Devries[1] for return of property and to quash the garnishment as to her property. The Government moved for a hearing pursuant to 28 U.S.C. § 3205(c)(5) and, with the parties' agreement, I held a telephonic evidentiary hearing on May 19, 2020. *See* Doc. No. 63. The Government called Bradley Assman, Vice President of First Community Bank, as a witness and did not present any exhibits. *See* Doc. Nos. 62, 63. Elma testified on her own behalf and also presented testimony from Clint. Doc. No. 63. Elma also offered the following exhibits:

Exhibit A:   Toy Auction Records, 12/14/19.
Exhibit B:   Last Financial Statement to First Community Bank from Clint Devries, 2/24/15.
Exhibit C:   Chris Ludwig Appraisal for Elma Devries, 6/24/17.
Exhibit D:   Farm Machinery Appraisal for First Community Bank, 12/8/15.
Exhibit E:   Purchase Agreement and Closing Documents between Clint Devries and M&M Land and Livestock, LLC, 4/5/16.
Exhibit F:   Real Estate Contract between Elma Devries and M&M Farms, 7/5/17.

---

[1] Elma is the mother of defendant Clint Devries. For clarity, I will refer to members of the Devries family by their first names.

Doc. No. 60.   The parties submitted briefs following the hearing.   *See* Doc. Nos. 66, 67.   With the Government's agreement and the court's permission, Elma also supplemented the record with Exhibit G, consisting of various banking documents from First Community Bank and other bank accounts in Clint's name, showing, among other things, the addresses associated with his accounts and the address at which Clint received communications from First Community Bank.

## II.    BACKGROUND

Clint pleaded guilty to two counts of making false statements to First Community State Bank in violation of 18 U.S.C. § 1014 and one count of bankruptcy fraud in violation of 18 U.S.C. § 152(2).   *See* Doc. No. 30.   He was sentenced to 18 months' imprisonment and ordered to pay restitution in the amount of $1,190,696.12.   *Id.*   He currently owes $1,164,556.   *See* Doc. No. 66 at 2.   He is now on supervised release and paying restitution pursuant to a payment plan.   *See* Doc. No. 54 at 1.

On December 12, 2019, the Government served a Writ of Continuing Garnishment on Steve Seidl/Chris Ludwig Auctioneers on information from Community State Bank that Clint Devries had a substantial nonexempt interest in toys and other tractor and farm memorabilia sold at auction.   Doc. No. 66 at 2.   The Answer of the Garnishee disclosed that the garnishees were in possession of $24,850 of property, but did not identify the property as belonging to Clint Devries or otherwise provide any description of Clint Devries' interest in the property.   Chris Ludwig Auctions later sent a letter to the court, filed January 2, 2020, stating it held a "DeVries Family Auction" but did not provide a description of the ownership of the property or otherwise indicate it was owned by Clint. The Government received the proceeds from the auction.   It has not served a writ of garnishment on Elma, who claims she was the owner of the property sold at the auction in question.   *See* Doc. No. 54 at 1-2.

2

On February 3, 2020, the Government subpoenaed Elma to a judgment debtor exam and requested she bring personal financial papers. Even though she is not a judgment debtor, she cooperated and sat for the exam, at which she testified that the monies held by the Government from the auction belong to her, not Clint. Following the exam, Elma requested the monies be returned to her. After no response was received to her requests, she filed the instant motion through counsel on April 9, 2020, stating the items sold belonged to her and not Clint.

### III.   ANALYSIS

#### A.   *Findings of Fact*

Bradley Assman is Vice President and Ag Loan Officer of First Community Bank in Rockwell City, Iowa. He was involved in the refinancing of Clint's loans that were the subject of Clint's criminal prosecution. In 2015, he visited Clint's farm at 2144 390th Street in Lake City, Iowa, to review the security for Clint's loans. This was a general, routine visit to observe equipment and crops. Assman reported that during the visit, Clint asked Assman if he wanted to see "his" toy collection. He said they went to the basement of the farmhouse[2] where he observed hundreds of toys (mostly toy tractors) many of which appeared to be in their original boxes as well as signs and other items that were in totes. Assman believed that the toys had value. At the time of Assman's visit, Clint knew he was in financial trouble and wanted to assure Assman he had sufficient assets to secure the loans.

---

[2] Assman noted this was the address the bank had on file for Clint. He believes that Clint's grandfather lived at the farmhouse at some point but did not know whether Clint or anyone else lived at the farmhouse at the time of the 2015 farm visit. Assman understood that Clint had lived in Rockwell City when he was married and with his parents after his divorce, which he thought was in 2014, while Clint's parents lived a mile and a half away from the farm. Assman had no knowledge of whether the toys were ever at another location other than the farm.

Clint sold[3] the farm to Mark Schleisman later that year and the bank received the proceeds, which fell short of the amount owed. Assman testified that the bank became aware in fall 2015 that Clint was selling grain in Elma's name, contrary to the bank's security interest. When completing the bank's victim impact statement, Assman was concerned whether the toys had been liquidated.[4] Assman later became aware that the toys were going to be sold at auction in December 2019. He reviewed the toys on the auctioneer's website. The items were similar in terms of quantity and types of toys he had observed during the 2015 farm visit. Assman noted the website listed "the Devries family" as the seller. Assman has no knowledge regarding the toys that were sold at the auction and the toys that were retained. At no time did Clint include a toy collection in his financial statements with the bank, even though the statements include a line for household items and other assets.

---

[3] The bank was not involved in the sale agreement and does not have knowledge of the terms of the agreement.

[4] Mr. Assman's response to the question "Are you aware of any assets of the defendant?" in the victim impact statement is as follows:

> I really cannot answer that question either YES or NO, my answer would be MAYBE. I became aware of the fact that Mr. DeVries hadn't sold all of his machinery and equipment a month or so ago. I contacted Chris Phillips at the OIG office regarding this matter. I informed him that while doing a farm inspection another customer and I drove past Mr. DeVries former property and it came up as to what was going on with him. In the conservation [sic] I was informed that not all of the machinery and equipment was sold. My customer informed me that only select items were sold at the Pocahontas Machinery Auction. I asked him about several antique tractors and antique toy tractors that Mr. DeVries had if they got sold? He informed me that none of these items got sold and it was still at the acreage. The acreage is located at 2144 390th Street Lake City, Iowa 51449. Mr. Devries has called the antique tractors his "babies" as they are very sentimental to him. He doesn't want to be forced to sell or lose these items so I'm sure that he probably transferred them to his parents name or gave them to them to avoid losing them.

Doc. No. 18-2 at 5.

Elma testified that Clint moved in with her and her husband, Delroy, after his divorce in 2014 and again following his release from imprisonment in 2019. The farm at 2144 390th Street is an acreage that had been built by her in-laws in the 1970s. In 2014 and 2015, her father-in-law, Rupert Devries, lived at 2144 390th Street until he passed away in March 2015. No one lived there after his passing or moved into the house later. Clint never lived in the house at any point. Elma and Delroy purchased the 2144 390th Street acreage from her in-laws and sold it to Clint around 2010 when she and her Delroy were experiencing financial difficulties. Elma and Delroy filed bankruptcy around this time and never disclosed any of the toys on the bankruptcy schedule.[5] Around 2010, Clint worked on the farm. He continued living with his parents after he purchased the acreage and received mail at his parents' house at 2361 390th Street. He lived in Rockwell City from 2011 through late 2013.

Rupert collected toys since at least 1970. He had five children. Elma and Delroy also collected toys. Elma's father worked for John Deere. She and Delroy have been collecting toys since the time they married. Elma noted that she and Delroy stored some of their toys in the basement at the acreage when they moved back to Iowa from Colorado in 1992. Other children stored items in the basement as well. Elma and Delroy's toys became mixed with Rupert's toys. There were times when Elma and Delroy purchased toys for Rupert's collection and for Clint. Clint also purchased toys for Elma and Delroy and for Rupert. Elma never kept a list of who purchased what for whom or when. Rupert passed away intestate in March 2015. The children agreed that if they wanted items from the house, they could take them. Some children came to the acreage and took items they wanted. No one took the toys and Elma considered anything that was left in the farmhouse to be hers and Delroy's.

---

[5] Elma stated she did not own any of Rupert's toys at this time and she acquired more toys after 2010. She also did not know the value of any of her toys at this time.

As noted above, Clint sold the acreage and adjoining farmland to Schleisman in 2015. Schleisman owned the property from approximately 2015 through 2017. During this time, the toys were still in the basement of the farmhouse and Schleisman never disposed of or removed them. Elma purchased the acreage back from Schleisman in 2017, but not the adjoining farmland. The toys were still in the basement when she took ownership. No one moved into the house at this time and only Elma's name appears on the mortgage for the property. She had Chris Ludwig come do an appraisal of the items in the basement as well as items at her home when she needed extra money to make a mortgage payment. Elma then arranged for an auction and chose the items to sell. Elma did not sell all of the items listed in the appraisal. *See* Doc. No. 61-3. She kept some for sentimental value. Some of the items sold originally belonged to Rupert but became hers and Delroy's after Rupert passed away and none of his other children claimed them.

Clint never lived at 2144 390th Street in Lake City, Iowa, even during the time he owned the acreage. Clint never identified the toys as assets on his financial statements. *See* Doc. No. 61-2.[6] The toy collection is also not identified in other financial documents. *See* Doc. No. 61-4, 61-5. Clint has never moved any of the toys to his other residences or otherwise claimed ownership of the toys. Clint bought toys as gifts for other members of his family[7] that were in the collection but has never claimed ownership of those toys.

---

[6] Clint's criminal convictions stemmed from inflating numbers regarding the amount of grain he had on hand and the number of acres he was farming. He did not inflate his personal inventory assets on the financial statements.

[7] Many members of the Devries family helped on the farm and were not paid. Clint explained that up until 2014, he would give family members gifts, such as toys, as a token of his appreciation for their help on the farm. The toy collection was not made up entirely of gifts from Clint.

**B.     Conclusions of Law**

**1.     Burden of Proof**

The parties disagree who bears the burden of proof.   Elma argues it is the Government's burden.   The Government argues it is Elma's burden, as the objecting party.   The Government's argument is based on 28 U.S.C. § 3205(c)(5), which provides that the judgment debtor or the United States may file a written objection to the answer and request a hearing and that the objecting party bears the burden of proving the grounds for the objection.   Of course, Elma is not the judgment debtor nor the United States. The Government points out that under 28 U.S.C. § 3013, the court may deny, limit, condition, regulate, extend or otherwise modify a garnishment upon motion of an interested party.   Section 3013 is silent, however, as to the burden of proof, which the Government takes to mean it does not modify the standard under 28 U.S.C. § 3205(c)(5) in which the objecting party must state the grounds for the objection and bear the burden of proof.   Again, however, Section 3205(c)(5) provides that only the judgment debtor or the United States may file a written objection.[8]

Elma argues the Government bears the burden of proving that the statute applies, i.e., that the property at issue is property of the debtor.   Doc. No. 67 at 10 (citing *United States v. Santee Sioux Tribe*, 254 F.3d 728, 733 (8th Cir. 2001)).   Elma contends that she assumes no responsibilities or burdens under 28 U.S.C. § 3014 because she is not the debtor, nor the garnishee.   *Id.*   She also notes that under Iowa law, the party seeking

---

[8] 28 U.S.C. § 3205(c)(5) provides:

> Within 20 days after receipt of the answer, the judgment debtor or the United States may file a written objection to the answer and request a hearing.   The party objecting shall state the grounds for the objection and bear the burden of proving such grounds.   A copy of the objection and request for a hearing shall be served on the garnishee and all other parties.   The court shall hold a hearing within 10 days after the date the request is received by the court, or as soon thereafter as is practicable, and give notice of the hearing date to all the parties.

7

to take possession of another's property, either under a replevin action or garnishment, bears the burden of proof. *Id.* (citing *Marx Truck Line, Inc. v. Fredricksen*, 150 N.W.2d 102, 105 (Iowa 1967)).

Many states recognize it is the third party's burden to prove ownership in the garnished property. *See Giove v. Stanko*, 882 F.2d 1316, 1319 (8th Cir. 1989) (citing Nebraska law for the proposition that "[i]ntervenors in a garnishment proceeding are required to prove by a preponderance of the evidence their ownership interest in a garnished account."); *Schwartz v. Rent-A-Wreck of America*, 397 F. Supp. 3d 778, 782 (D. Md. 2018) ("When a Third Party in a garnishment proceeding such as JJFMS makes a claim of prior right to a garnished asset, the burden of persuasion rests upon it to establish its claim to the garnished property, pursuant to Maryland Rule 2-643(e)."); *Putman & Putman, Inc. v. Capitol Warehouse, Inc.*, 775 S.W.2d 460, 463 (Tex. App. 1989) ("If another person claims ownership of the funds, he must intervene and by appropriate allegations and proof overcome that rebuttable presumption if he is to recover the funds as being *his* property" but noting that if the garnishee's answer raises doubts as to who owns the funds, the burden of proof falls upon the garnishor to establish affirmatively that the debtor owns the funds); *Miller v. Clayco State Bank*, 708 P.2d 997, 1001 (Kan. Ct. App. 1985) ("when the ownership of the garnished account is disputed, an expeditious hearing of the issue is contemplated, and there is imposed upon the party seeking to rebut the presumption of equal ownership [of a joint bank account] the burden of proving otherwise."); *Sears, Roebuck and Co. v. Cosey*, 44 P.3d 582, (Okl. Ct. App. 2002) (concluding that third party did not have a burden to prove that debtor had no interest in the joint account but did have the burden to prove that she owned the funds in the account that were garnished); *Reading & Bates Const. Co. v. Baker Energy Resources Corp.*, 698 So.2d 413, 421 (La. App. 3d Cir. 1997) ("when LLR intervened in the garnishment proceeding to assert its ownership interest in the funds sought to be garnished by Reading, it assumed the burden of proving its alleged interest in such funds."); *Yakima*

8

*Adjustment Service, Inc. v. Durand*, 622 P.2d 408, 411 (Wash. Ct. App. 1981) ("The burden of proving the ownership of the funds [in a joint account] rests upon the joint depositors"); *Indianola Tractor Co., Inc. v. M.A. Tankesly*, 337 So.2d 705 (Miss. 1976) (stating that burden of proof was on intervenor to offer evidence in support of its motion and claim). *But see Branch Banking and Trust Co. v. ARK Development/Oceanview, LLC*, 150 So.3d 817, 820 (Fla. Dist. Ct. App. 2014) ("Although it has been held that a garnishor may use garnishment to obtain funds fraudulently transferred to a third party, it is the *garnishor's* burden to prove that the property garnished was the property of the debtor."); *Garvey v. Parrish*, 405 N.E.2d 1105, 1110 (Ill. App. Ct. 1980) ("The garnishor has the burden of showing that the garnishee holds property belonging to the judgment debtor.").

Under Iowa law, the judgment creditor must prove the debt is owed to the debtor. *See Penford Prods. Co. v. C.J. Schneider Engineering Co., Inc.*, 808 N.W.2d 443, 448 (Iowa Ct. App. 2011) ("The burden is on the judgment creditor to establish that the debt is owed by the garnishee to the principal-defendant"). However, when a third-party intervenor is involved, the intervenor assumes the burden of proof. *See Verschoor v. Miller*, 143 N.W.2d 385, 388 (Iowa 1966) ("Intervenors here have the burden of proving the allegations of their respective petitions. They have the burden of showing the funds sought belong to them."). The burden of proof also properly rests with Elma under Iowa law as the party making the claim. *See also Jennings v. Farmers Mut. Ins. Ass'n*, 149 N.W.2d 298, 300 (Iowa 1967) ("One who pleads and relies upon the affirmative of an issue, of course, must carry the burden to prove it."). In sum, I find that the Government must make an initial showing that there is basis to believe the garnished property is owed to the judgment debtor. If the Government makes this initial showing, then third-party bears the burden of proving that he or she is the rightful owner of the property and that the debtor has no claim to it.

9

This is similar to the standard used in civil forfeiture proceedings,[9] in which the initial burden is on the Government to prove by a preponderance of the evidence that the defendant property is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1). When the Government claims that property is subject to forfeiture because it "was used to commit or facilitate the commission of a criminal offense," the Government must establish "that there was a substantial connection between the property and the offense." *Id.* § 983(c)(3). If the Government satisfies its burden of proof, then the claimant must prove an affirmative defense such as "innocent owner" or that the forfeiture constitutes an excessive fine. *Id.* § 983(d). Similarly here, once the Government shows that some basis exists to garnish the property in the first instance, a party objecting to the garnishment who is not the debtor or the garnishee, but claims ownership in the property, must prove ownership by a preponderance of the evidence.

## 2. *Was the Property Subject to Garnishment?*

The Mandatory Victims Restitution Act (MVRA) provides that when an identifiable victim suffers a pecuniary loss, the court "shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). An order for restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment. *See* 18 U.S.C. § 3613(c). The Government may enforce an order of restitution pursuant to 18 U.S.C. §§ 3571-74, 18 U.S.C. §§ 3611-15 and "by all available and reasonable means." 18 U.S.C. § 3664(a)(1)(A). This includes procedures for the collection of a civil judgment under federal or state law. *See* 18 U.S.C. § 3613 ("The United States may enforce a judgment imposing a fine in accordance

---

[9] A civil forfeiture action is an *in rem* proceeding brought by the government as plaintiff against defendant property asserting that "[a]ll right, title, and interest in [the defendant] property" has vested in "the United States upon commission of the act giving rise to forfeiture . . . ." 18 U.S.C. § 981(f).

10

with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."). Under federal law, the Federal Debt Collections Procedures Act (FDCPA) is used by the Government to enforce a restitution judgment against all nonexempt property of a defendant. 18 U.S.C. § 3613(a)(1). One tool of enforcement is garnishment pursuant to 28 U.S.C. § 3205, which provides:

> A court may issue a writ of garnishment against property (including non-exempt disposable earnings) in which the debtor has a substantial non-exempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor. Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located. A court may issue simultaneous separate writs of garnishment to several garnishees. A writ of garnishment issued under this subsection shall be continuing and shall terminate only as provided in subsection (c)(10).

"Property" is defined as "any present or future interest, whether legal or equitable, in real, person (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts))." 28 U.S.C. § 3002(12).

The Government's argument that the property was subject to garnishment is based primarily on Clint's statement to Assman about "his" toy collection at the time of the 2015 farm visit. The toys were in the basement of a house that Clint owned at the time. Judgment was entered in this case on February 8, 2018. At that time, the acreage was owned by Elma, who had purchased it from Schleisman in 2017, who had purchased it from Clint in late 2015, who had purchased it from his parents in 2010. The toys remained in the basement each time the acreage was bought and sold. The Government's only other basis for establishing Clint's interest in the toys is Elma's failure to disclose them as assets as part of her and Delroy's 2010 bankruptcy filing, present proof of insurance, or to provide evidence as to proof of purchase or possession.

11

Elma testified that the toys in the basement belonged to Rupert and to her and Delroy. When Rupert passed away intestate, none of his children took possession of or claimed ownership in the toys. Some children came and took other items they wanted from the home, but none indicated they wanted the toys. Elma believed that anything left in the home that the other children did not want was the property of her and Delroy. It was Elma who ultimately contacted the appraiser and arranged for the auction of the toys (including those she considered her own from the start). She was the one who decided which toys to sell and which to keep. She was the one who arranged for the toys to be moved to the site of the auction. No one has challenged Elma's ownership of the toys except for the Government.

I find that the Government has failed to meet its initial burden of showing that Clint had any interest in the toys sold at the auction and that the property was therefore subject to garnishment. Clint's alleged comment to Assman in 2015 about "his" toy collection (which Clint denies) is hardly sufficient. For starters, the evidence shows that the house in which the toys were located was sold twice after Clint made the alleged comment. Moreover, as the Government acknowledges, Clint had already lied to the bank about his assets at the time and "was doing everything that he could to keep the bank from realizing the terrible financial trouble that he was in." Doc. No. 66 at 13. Clint may have misled the bank into believing the toys were his, but that does not make it so, particularly where a third-party claims bona fide ownership of the property.

The Government otherwise attempts to establish Clint's ownership by Elma's failure to identify the toys as assets in bankruptcy schedules or otherwise provide documentation of her ownership. The bankruptcy filing occurred years before Clint's alleged statement to Assman about the toys being "his" and proves nothing about who owned the toy collection during the relevant time period. And Elma's failure to provide documentation about her ownership of collectible toys does not establish that they actually

belonged to Clint.   The Government's argument that Clint had an ownership interest in the toys is based on speculation and dated evidence that has little or no probative value.

Even if the Government could make a sufficient showing proving the proceeds of the auction were owed to Clint (or even if such a showing is not required by law), I further conclude, for the reasons described above, that Elma has proved by a preponderance of the evidence that she is the true owner of the garnished property and that Clint has no interest in that property.   As such, she is entitled to the garnished funds.

## IV.    CONCLUSION

For the reasons stated herein, Elma Devries' motion (Doc. No. 54) for return of property and to quash the garnishment as to her property is **granted**.   The writ of garnishment is hereby quashed and the Clerk of Court is directed to release the garnished funds in the amount of $24,850 to Elma Devries.

**IT IS SO ORDERED.**

**DATED** this 16th day of July, 2020.

_____
Leonard T. Strand, Chief Judge

13